# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BARETICH, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EVERETT FINANCIAL, INC. d/b/a SUPREME LENDING, a Texas Corporation,<br><br>Defendant. | Case No.: 18cv1327-MMA (BGS)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>[Doc. No. 5] |

Plaintiff Richard Baretich ("Plaintiff") filed this putative class action against Defendant Everett Financial, Inc. d/b/a Supreme Lending ("Defendant") in the Superior Court of California, County of San Diego. *See* Doc. No. 1-2 (hereinafter "Compl."). On June 19, 2018, Defendant removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Doc. No. 1. On July 19, 2018, Plaintiff filed a motion to remand this action back to state court. *See* Doc. No. 5. Defendant filed an opposition, to which Plaintiff replied. *See* Doc. Nos. 6, 9. The Court further permitted Defendant to file a sur-reply, which Defendant filed on August 31, 2018. *See* Doc. No. 14. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 10. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion to remand.

## BACKGROUND

Plaintiff, a California resident, previously worked for Defendant as a non-exempt employee in California from October 2016 through March 2017. *See* Compl. ¶¶ 17-18.

On May 18, 2018, Plaintiff filed this putative class action in San Diego Superior Court on behalf of himself and all other similarly situated California employees, alleging eight claims for relief: (1) failure to pay overtime wages, in violation of Cal. Lab. Code §§ 510, 1198; (2) failure to provide meal periods, in violation of Cal. Lab. Code §§ 226.7, 512(a); (3) failure to provide rest periods, in violation of Cal. Lab. Code § 226.7; (4) failure to pay minimum wages, in violation of Cal. Lab. Code §§ 1194, 1197, 1197.1; (5) failure to timely pay wages, in violation of Cal. Lab. Code §§ 201, 202; (6) failure to provide complete and accurate wage statements, in violation of Cal. Lab. Code § 226(a); (7) failure to reimburse necessary business-related expenses and costs, in violation of Cal. Lab. Code §§ 2800, 2802; and (8) unfair and unlawful business practices, in violation of Cal. Bus. & Prof. Code § 17200 et seq. *See* Compl. Plaintiff defines the proposed class as "[a]ll current and former non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." *Id.* ¶ 13.

Defendant removed the action to this Court on June 19, 2018. *See* Doc. No. 1. Plaintiff filed the instant motion to remand on July 19, 2018. *See* Doc. No. 5.

## LEGAL STANDARD

"As a general matter, defendants may remove to the appropriate federal district court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.' 28 U.S.C. § 1441(a). The propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). The "propriety of removal" in this case arises under "CAFA[, which] gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee*

*Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014).

A notice of removal must contain a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). There is no presumption against removal jurisdiction in CAFA cases. *Dart*, 135 S. Ct. at 554 (noting "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.") (internal quotations omitted). The burden of establishing removal jurisdiction under CAFA lies with the proponent of federal jurisdiction. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart*, 135 S. Ct. at 553. "Evidence establishing the amount is required" where, as here, the plaintiff challenges the defendant's amount in controversy assertion. *Id.* at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)). "Under the preponderance of the evidence standard, a defendant must establish 'that the potential damage could exceed the jurisdictional amount.'" *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1149 (S.D. Cal. 2018) (quoting *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014)).

## DISCUSSION

There is no dispute that this action involves more than 100 employees, or that minimal diversity exists. The sole issue before the Court is whether Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $5 million. The Court proceeds by analyzing Defendant's burden in removing the action, and then addresses the amount in controversy with respect to Plaintiff's claims for relief.

### 1. Defendant Satisfied its Burden in the Notice of Removal

Plaintiff asserts that "the evidence Defendant offers [in its notice of removal] is woefully inadequate for this Court to determine whether Defendant satisfied its burden by

| 1 | a preponderance of the evidence." Doc. No. 5-1 at 4. Moreover, in his reply brief,
| 2 | Plaintiff contends that "Defendant failed to meet its initial burden, thereby relieving
| 3 | Plaintiff of having to submit evidence in support of remand." Doc. No. 9 at 2.

In its notice of removal, Defendant indicates that the amount in controversy exceeds $5 million based on the class definition and the fact that in his Complaint, Plaintiff seeks actual, consequential, and incidental damages, as well as unpaid wages, premium wages, interest, civil (waiting time and other) penalties and statutory damages, liquidated damages, restitution, disgorgement, injunctive relief, and attorneys' fees. *See* Doc. No. 1 at 2.

Contrary to Plaintiff's assertions, the Supreme Court has made clear that in a notice of removal, "[a] statement 'short and plain' need not contain evidentiary submissions." *Dart*, 135 S. Ct. at 551. "Evidence establishing the amount is required by § 1446(c)(2)(B) *only when* the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554 (emphasis added). Defendant provided a "short and plain statement of the grounds for removal" as required, and was not obligated to submit evidence in support of its notice of removal. 28 U.S.C. § 1446(a); *see also Dart*, 135 S. Ct. at 554 ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *Gardner v. GC Servs., LP*, No. 10-CV-997-IEG (CAB), 2010 WL 2721271, at *3 (S.D. Cal. July 6, 2010) ("Contrary to Plaintiff's contentions, however, there is no obligation on Defendant to submit any declarations or 'summary-judgment type evidence' in support of its assertion that the jurisdictional amount is met in the present case."). Once Plaintiff challenged Defendant's amount in controversy calculations, Defendant submitted evidence in support of its assertion that the amount in controversy exceeds $5 million.

Accordingly, the Court finds that Defendant met its initial burden in removing the instant action, and remand on this basis is improper.

/ / /

/ / /

## 2. Amount in Controversy Calculations

Plaintiff's Complaint is silent with respect to damages sought, aside from indicating that Plaintiff's individual damages do not exceed seventy-five thousand dollars ($75,000). Compl. ¶ 1. Plaintiff argues that the Court should remand this action because Defendant "failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5,000,000." Doc. No. 5-1. In opposition to the instant motion, Defendant submitted the declaration of Emily Dworshak, Director of Human Resources for Defendant. *See* Doc. No. 6-1. Based on Ms. Dworshak's declaration, Defendant calculates the amount in controversy to range from $7,954,081 to $9,217,153. *See* Doc. No. 6 at 23. Plaintiff further argues that Defendant's estimate of the amount in controversy figures are inflated and speculative because Defendant applies violation rates of 60% to 100% to Plaintiff's various causes of action. *See* Doc. No. 9 at 3. Plaintiff asserts that "pattern and practice" allegations do not support any particular violation rate. *See id.* at 5.

### a. Minimum Wage, Overtime, Meal, and Rest Break Claims

Plaintiff alleges that Defendant "had a pattern and practice of failing to pay [its] hourly-paid or non-exempt employees within the State of California for all hours worked, missed (short, late, interrupted, and/or missed altogether) meal periods and rest breaks in violation of California law[.]" Compl. ¶ 16(b). Plaintiff further alleges that Defendant "engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California, involving, *inter alia*, failing to pay them for all regular and/or overtime wages earned, missed meal periods and rest breaks in violation of California law." *Id.* ¶ 25.

Defendant contends that application of a 100% violation rate is warranted based on Plaintiff's allegations. *See* Doc. No. 6 at 8-9. Defendant maintains that in any event, it "need only apply a 60% violation rate for the amount in controversy to well exceed the jurisdictional threshold." *Id.* at 9. Utilizing a 60% violation rate, Defendant calculates that these four claims place at least $4,203,531 at issue. *See id.* at 11-14. Plaintiff asserts

that "pattern and practice" allegations do not support any particular violation rate. Doc. No. 9 at 4. However, without waiving his position that "pattern and practice" allegations do not support any particular violation rate, Plaintiff contends that application of a "25% violation rate would be a 'conservative and reasonable assumption' based on his allegations." *Id.*

Here, in determining the appropriate violation rate to apply to calculate the amount in controversy, the Court begins by looking to Plaintiff's allegations in the Complaint. *See Ibarra*, 775 F.3d at 1197 ("In determining the amount in controversy, courts first look to the complaint."); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's complaint"). Contrary to Defendant's assertion, although Plaintiff's allegations indicate that the violations were regular, such allegations cannot "*only* be taken to mean that the violations were universal and at a 100% rate." Doc. No. 6 at 9 (emphasis added). Indeed, the Ninth Circuit has made clear that "a 'pattern and practice' of doing something does not necessarily mean *always* doing something." *Ibarra*, 775 F.3d at 1198-99 (emphasis in original).

The Court notes that Plaintiff's Complaint includes additional allegations that Defendant "intentionally and willfully failed to pay all overtime wages owed to Plaintiff and the other class members" (Compl. ¶ 49), "intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium" (*id.* ¶ 59), and "failed to pay minimum wage to Plaintiff and the other class members as required" (*id.* ¶ 74). Such allegations, read in connection with Plaintiff's pattern and practice allegations, support the interpretation that Plaintiff and putative class members were appropriately compensated some, but not all, of the time. Most importantly, Plaintiff "does not allege that [Defendant] universally, on each and every shift, violates labor laws[.]" *Ibarra*, 775 F.3d at 1199. Thus, application of a 100% violation rate is not supported by Plaintiff's express allegations in the Complaint.

Defendant next contends that application of a 60% violation rate is reasonable with respect to Plaintiff's overtime, minimum wage, meal, and rest break claims. *See* Doc. No. 6 at 9-10. Defendant bears the burden to show that application of a 60% violation rate is based on reasonable assumptions. *See Ibarra*, 775 F.3d at 1199 (noting that the defendant "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions.").

Defendant primarily relies on *Bryant*, where the district court found the defendant's assumed violation rates of 60% and 30% to be reasonable particularly because the complaint "offered no guidance as to the frequency of the alleged violations, only that Defendant had a 'policy and practice' of meal and rest period violations." 284 F. Supp. 3d at 1151; *see also Hull v. Mars Petcare US, Inc.*, No. 18-CV-1021 PSG (KKx), 2018 WL 3583051, at *4 (C.D. Cal. July 25, 2018) (finding a 60% violation rate reasonable where the alleged violations are based on a standard policy); *Stanley v. Distribution Alts., Inc.*, No. 17-CV-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (accepting assumed violation rates of "three missed rest breaks, and three missed meal breaks per week" where the complaint offered no guidance as to the frequency of the alleged violations); *Alvarez v. Office Depot, Inc.*, No. 17-CV-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding 60% violation rate reasonable where the complaint "alleges a uniform practice of meal and rest period violations.").

Plaintiff, however, cites to cases wherein district courts considered "pattern and practice" allegations, and rejected application of such violation rates. *See Basile v. Aaron Bros., Inc.*, No. 17-CV-485-L (NLS), 2018 WL 655360, at *2 (S.D. Cal. Feb. 1, 2018) (finding that while the plaintiff's pattern and practice allegations indicate that the "violations were regular," such allegations "do not speak to their frequency, and are therefore insufficient to support the assumption of *any* particular rate violation.") (emphasis added); *Sanders v. Old Dominion Freight Line, Inc.*, No. 16-CV-2837-CAB-NLS, 2017 WL 5973566, at *4 (S.D. Cal. Feb. 2, 2017) ("[W]ithout evidence to support

this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation and conjecture."). Moreover, the Ninth Circuit has articulated that "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. "[A] damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199. Thus, because Plaintiff's Complaint contains "pattern and practice" allegations, the Court finds the line of cases relied on by Plaintiff to be persuasive, and in line with binding Ninth Circuit authority.

Upon review of the pleadings and evidence submitted, Defendant offers no reason "grounded in real evidence" as to why a 60% violation rate is appropriate. *Ibarra*, 775 F.3d at 1199. While Defendant has submitted the declaration of Ms. Dworshak, she does not have any information regarding "how frequently putative class members missed meal periods, were offered late meal periods, or were offered meal periods of a duration shorter than required by law." *Morris v. Camden Dev., Inc.*, No. 18-CV-3089-GW(FFMx), 2018 WL 4156593, at *5 (C.D. Cal. Aug. 27, 2018). The same is true with respect to the violation rates for Plaintiff's rest period, overtime, and minimum wage claims. In sum, Ms. Dworshak's declaration does not address Defendant's alleged violation rates and thus "offers no information by which the Court may conclude that Defendant's assumptions were not 'pulled from thin air.'" *Id.* (quoting *Ibarra*, 775 F.3d at 1199). Notably, Plaintiff does not submit a declaration indicating he experienced less frequent violations, but argues for application of a 25% violation rate that is similarly not "grounded in real evidence." *Ibarra*, 775 F.3d at 1199; *see also Sanders*, 2017 WL 5973566, at *4 ("Because use of either a 25% violation rate or a 50% violation rate would at a minimum be equally reasonable (or equally unreasonable), it is impossible for the Court to decide that [the defendant] has satisfied its burden . . . .").

Further, the Court acknowledges Defendant's concern that removing defendants should not be required to "submit evidence of their liability—i.e., evidence of a violation rate[.]" Doc. No. 6 at 6. Many courts have considered this "fundamental tension" and have reached differing conclusions. *Morris*, 2018 WL 4156593, at *6. However, "the Court may not simply ignore the Ninth Circuit's directive that it should not rely [on] 'an assumption about the rate of [defendant's] alleged labor law violations that [is] not grounded in real evidence.'" *Id.* (quoting *Ibarra*, 775 F.3d at 1199).

Accordingly, the Court finds that Defendant has not satisfied its burden, by a preponderance of the evidence, as to the amount in controversy with respect to Plaintiff's overtime, minimum wage, meal, and rest period claims. *See Ibarra*, 775 F.3d at 1199.[1]

### b. Wage Statement Violations Claim

Plaintiff claims Defendant "intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements." Compl. ¶ 86. Defendant, applying a 100% violation rate, contends that this claim places at least $227,150 at issue. *See* Doc. No. 6 at 16. Plaintiff argues a 100% violation rate is not justified. *See* Doc. No. 9 at 7-8.

Defendant explains that Plaintiff's allegations, when "[r]easonably read," support the interpretation that *all* wage statements provided to *all* alleged class members were non-compliant for the *entire* alleged class period. Doc. No. 6 at 16. However, Plaintiff's allegations do not speak to the frequency of the alleged violations. *See* Compl. ¶ 32 (noting Plaintiff and the other class members "did not receive complete and accurate wage statements from Defendant[]."). Moreover, Defendant presents no evidence in support of its assumption regarding the frequency of the alleged wage statement violations. Defendant's "assumption is therefore unsupported," and the Court finds that

---

[1] Because the Court finds that Defendant has not satisfied its burden with respect to the violation rate, the Court need not address Plaintiff's argument that Defendant improperly calculated the regular rate of pay, thereby resulting in inflated figures for Plaintiff's meal and rest break claims. *See* Doc. No. 9 at 7.

Defendant has not satisfied its burden, by a preponderance of the evidence, as to the amount in controversy with respect to Plaintiff's wage statement claim. *Basile*, 2018 WL 655360, at *3; *see also Sanders*, 2017 WL 5973566, at *5 (finding the defendant failed to satisfy its burden to demonstrate, by a preponderance of the evidence, that a 98.7% violation rate is reasonable).

### c. Waiting Time Penalties Claim

Plaintiff alleges Defendant "intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendant[] their wages, earned and unpaid, within seventy-two (72) hours" of leaving Defendant's employ. Compl. ¶ 80. Defendant, applying a 100% violation rate, asserts this claim places at least $1,881,000 at issue. *See* Doc. No. 6 at 15. Plaintiff argues a 100% violation rate is unwarranted. *See* Doc. No. 9 at 7-8.

Defendant asserts "it is reasonable to assume that the full penalty of 30-days wages is in controversy for those putative class members" based on Plaintiff's allegations. Doc. No. 6 at 16. However, Plaintiff's allegations do not speak to the frequency of the alleged violations. Specifically, Plaintiff contends that he and the other class members "are entitled to recover" from Defendant "the statutory penalty wages for each day they were not paid, *up to a thirty (30) day maximum* pursuant to California Labor Code section 203." Compl. ¶ 83 (emphasis added). Defendant again fails to provide any evidence that it is reasonable to assume that the full penalty of 30-days wages is in controversy. Thus, Defendant has not satisfied its burden, by a preponderance of the evidence, as to the amount in controversy with respect to Plaintiff's waiting time penalties claim. *See Amirian v. Umpqua Bank*, No. 17-CV-7574 FMO (FFMx), 2018 WL 3655666, at *5 (C.D. Cal. July 31, 2018) ("In the absence of evidence regarding how many class members were not allowed to take meal and rest breaks, how many were not paid in a timely manner after termination, and how many otherwise were not paid for all hours work[ed], the court has no basis from which to infer a 100% violation rate.").

/ / /

### d. Unreimbursed Business Expenses Claim

Plaintiff alleges that he and the other class members "incurred necessary business-related expenses and costs that were not fully reimbursed by Defendant[]." Compl. ¶ 93. Nonetheless, Defendant "conservatively estimates" a violation rate of $1 to $10 a week in unpaid expenses, through the maximum class period, for 60% of the employees. Doc. No. 6 at 17. Defendant asserts that Plaintiff's unreimbursed business expenses claim places at least $51,584 (applying a $1 violation rate) to $515,840 (applying a $10 violation rate) at issue. *See id.* Plaintiff claims such estimates are "purely conjectural" and asserts that Defendant "appears to pull numbers out of thin air." Doc. No. 9 at 8.

As Defendant concedes, Plaintiff's Complaint does not specify what expenditures were not fully reimbursed, or their respective values. *See* Doc. No. 6 at 17. Defendant submits no evidence to support the figures presented. As such, because Defendant's calculations are unsupported, Defendant has failed to meet its burden, by a preponderance of the evidence, as to the amount in controversy with respect to Plaintiff's unreimbursed business expenses claim. *See Morgan v. Childtime Childcare, Inc.*, No. 17-CV-1641 AG (KESx), 2017 WL 5198160, at *5 (C.D. Cal. Nov. 10, 2017) (rejecting the defendant's calculations with respect to the plaintiff's unreimbursed business expenses claim, and stating that "high or low, the violation rate must be rooted in fact, and it's not clear why Defendant chose $50 as the violation rate for this claim.").

### e. Attorneys' Fees[2]

Defendant argues that Plaintiff's request for attorneys' fees places at least $1,590,816 in controversy. Doc. No. 6 at 18. Defendant calculates this figure by applying a 25% benchmark to the damages in controversy. *See id.* at 18-19. Plaintiff

---

[2] Defendant requests the Court take judicial notice of the declaration of Douglas Han in support of Defendant's argument that Plaintiff's counsel have obtained 35% of their client's recovery in attorneys' fees in similar actions. *See* Doc. No. 6-2. The Court need not rely on this document in reaching its conclusion that Defendant's calculations for attorneys' fees are unsupported. As such, the Court **DENIES AS MOOT** Defendant's request for judicial notice.

contends Defendant's estimate is "especially unreliable considering it is based on the underlying impermissible speculation regarding its amount in controversy calculations" for Plaintiff's claims. Doc. No. 9 at 9. The Court agrees. Because Defendant "did not meet [its] burden to establish the amount in controversy as to any of the claims"[3] discussed in its opposition to the instant motion, Defendant's fee calculation is "therefore unsupported." *Basile*, 2018 WL 655360, at *4.

### f. Summary

In sum, the Court finds that Defendant has failed to carry its burden to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5 million. As such, the Court lacks subject matter jurisdiction and remand is proper. *See Ibarra*, 775 F.3d at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions.").

### 3. Plaintiff's Request for Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c)

Finally, Plaintiff seeks and award of attorneys' fees incurred in filing the instant motion because Defendant lacked an objectively reasonable basis in removing this action pursuant to 28 U.S.C. § 1447(c). *See* Doc. No. 5-1 at 9-10. Upon due consideration, the Court finds that Defendant did not lack an objectively reasonable basis for removing this case to federal court. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."). Accordingly, the Court **DENIES** Plaintiff's request for attorneys' fees.

///

///

---

[3] Defendant also argues that the value of Plaintiff's request for disgorgement of profits and injunctive relief are also properly included in the amount in controversy. However, Defendant fails to submit any evidence, or provide any calculation, that would enable the Court to determine the value of such relief.

## Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiff's motion to remand, and **REMANDS** this action back to state court. The Court **DENIES** Plaintiff's request for attorneys' fees. The Clerk of Court is instructed to terminate all pending motions, deadlines, and hearings.

**IT IS SO ORDERED.**

Dated: September 25, 2018

HON. MICHAEL M. ANELLO
United States District Judge